PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JANE DOE, *et al.*, | ) | |
| | ) | CASE NO. 4:13CV00768 |
| Plaintiffs, | ) | |
| | ) | JUDGE BENITA Y. PEARSON |
| v. | ) | |
| | ) | |
| TRUMBULL COUNTY CHILDREN | ) | |
| SERVICES BOARD, *et al.*, | ) | |
| | ) | **MEMORANDUM OF OPINION &** |
| Defendants. | ) | **ORDER** [Resolving ECF No. 4] |

Plaintiffs Jane Doe and John Doe have filed a lawsuit seeking to hold a child services agency and several of its employees responsible for reprehensible acts of human depravity inflicted upon Plaintiffs' adopted daughter, Baby Girl Doe ("BGD"). As alleged by Plaintiffs, the acts were not committed by the agency's employees but by BGD's natural birth parents while the child was in the agency's care and on the agency's premises. Now the Court is called to decide a motion to dismiss filed by Defendants Trumbull County Children Services Board ("TCCSB"), Robin Moon ("Moon"), Marilyn Pape ("Pape"), and Jessica Watkins ("Watkins"). ECF No. 4. Defendants ask that the Court dismiss the Complaint in its entirety because, among other reasons, they do not believe the Complaint alleges facts showing that they deprived BGD of a constitutional right. The Court has reviewed the motion, the briefs, and the law. For the reasons provided, the Court denies the motion to dismiss.

-1-

## I. <u>Factual and Procedural Background</u>

The facts alleged in the Complaint are extremely troubling.  Plaintiffs are the adoptive parents of BGD, a minor child.  ECF No. 1 at 2.  TCCSB is a public children services agency.  ECF No. 1 at 2.  Moon and Pape were TCCSB supervisors and Watkins was a TCCSB caseworker.  ECF No. 1 at 2.  At all relevant times, BGD was in the custody and control of TCCSB as a dependent child with unfit natural parents.  ECF No. 1 at 2.  BGD's natural father is a felony sex offender who had been convicted of raping his three-year-old cousin and whose father had sexually abused his sister.  ECF No. 1 at 2.  BGD's natural mother, whose parental rights had repeatedly been involuntarily terminated, suffered from numerous mental health issues, was subservient to the will of BGD's natural father, and was a victim of his domestic violence.  ECF No. 1 at 2.  TCCSB was aware of the above facts regarding BGD's birth parents.  ECF No. 1 at 2-3.

At all relevant times, TCCSB "adopted, published, and implemented" child visitation guidelines that allowed for the unsupervised visitation of children by parents having criminal, social, and mental health histories and attributes like those of BGD's natural parents.  ECF No. 1 at 3.  Prior to December, 2010, BGD's natural parents visited her under the constant supervision of TCCSB personnel.  ECF No. 1 at 3.  In December, 2010, however, "consistent with the visitation guidelines but deliberately indifferent" to BGD's rights, Moon "and/or" Pape and Watkins "initiated and facilitated" a course of unsupervised visitation sessions for BGD's natural parents, which resulted in: "'Stepp[ing] down to monitor every fifteen minutes with the caseworker going into the room to check on [the] child and parents.'"  ECF No. 1 at 3.  Sometime during the summer of 2011, as a proximate result of the unsupervised visitation, BGD was repeatedly raped by both of her natural parents at TCCSB's facility in Warren, Ohio.  ECF No. 1 at 3.

-2-

(4:13CV00768)

Plaintiffs bring this action under the aegis of 42 U.S.C. § 1983, as next friends of BGD. They claim that Defendants' conduct caused their adopted daughter to suffer "a deprivation of liberty without due process of law, in violation of the Fifth Amendment, made applicable to the States through the Fourteenth Amendment to the U.S. Constitution." ECF No. 1 at 2-3. Plaintiffs seek compensatory damages in an amount in excess of three million dollars, with interest, as well as reasonable attorney's fees and recovery for the costs of this action. ECF No. 1 at 4.

Defendants filed a motion to dismiss the Complaint. ECF No. 4. Defendants contend that the Complaint should be dismissed (1) under Fed. R. Civ. P. 12(b)(6) for failing to state claims upon which relief can be granted; (2) on qualified immunity grounds; and (3) on the basis of Eleventh Amendment sovereign immunity. *See* ECF No. 4. In support of their motion, Defendants appended a memorandum of law. ECF No. 4. In response, Plaintiffs filed a "memorandum contra," ECF No. 5, to which Defendants filed a reply. ECF No. 6. The motion is ripe for adjudication.

## II. Legal Standard

"'[T]he very purpose of Fed. R. Civ. P. 12(b)(6) is to enable defendants to challenge the legal sufficiency of complaints without subjecting themselves to discovery.'" *Mitchell v. McNeil*, 487 F.3d 374, 379 (6th Cir. 2007) (*quoting Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559, 566 (6th Cir. 2003)). To survive a Rule 12(b)(6) motion to dismiss, the complaint must allege "enough facts to state a claim that is plausible on its face." *Bell Atlantic v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 677, 129 S. Ct. 1937, 173 L. Ed. 2d 868

3

(4:13CV00768)

(2009).  Whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense," but, where "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct" the complaint will not survive a Rule 12(b)(6) motion.  *Id.* at 679.

"In reviewing a dismissal under Rule 12(b)(6), all allegations in the complaint should be taken as true, and the complaint is to be construed liberally in favor of the party opposing the motion to dismiss."  *Scott v. Ambani*, 577 F.3d 642, 646 (6ᵗʰ Cir. 2009).  For a claim to be adequately pleaded, a party need only provide "a short and plain statement of the claim" showing that the pleader is entitled to relief.  Fed. R. Civ. P. 8(a)(2).  "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Iqbal*, 556 U.S. at 678.

### III.  Discussion

Section 1983[1] creates no substantive rights.  Rather, it provides remedies for deprivations of rights established elsewhere.  *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 817, 105 S. Ct. 2427, 85 L. Ed. 2d 791 (1985).  To prevail under the statute, a plaintiff must prove "(1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under the color of state law."  *Sigley v. City of Parma Heights*, 437 F.3d 527, 533 (6ᵗʰ Cir. 2006).

---

[1] "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory of the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . ." 42 U.S.C. § 1983.

4

(4:13CV00768)

Plaintiffs allege that a constitutional tort was committed by Moon, Pape, and Watkins (hereinafter "Individual Defendants"), whom, as the Complaint illuminates, "are sued only in their respective individual capacities." ECF No. 1 at 2. This allegation is noteworthy for it shows that Plaintiffs do not seek to impute the conduct of Individual Defendants to the government that employed them. *Hafer v. Melo, 502 U.S. 21, 27, 112 S. Ct. 358, 116 L. Ed. 2d 301 (1991)*. Plaintiffs also expressly disclaim any attempt to hold TCCSB liable under the doctrine of *respondeat superior*. ECF No. 5 at 3. Nonetheless, they contend that TCCSB can be held liable as a municipality under *Monell v. Department of Social Services of City of New York, 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978)*. *See* ECF No. 5 at 2-3. Furthermore, Plaintiffs appear to invoke the Constitution's substantive due process protections, which "protects individual liberty against 'certain government actions regardless of the fairness of the procedures used to implement them.'" *Collins v. City of Harker Heights, 503 U.S. 115, 125, 112 S. Ct. 1061, 117 L. Ed. 2d 261 (1992)* (*quoting Daniels v. Williams*, 474 U.S. 327, 331, 106 S. Ct. 662, 88 L. Ed. 2d 662 (1986)). Plaintiffs neither allege nor argue a violation of the procedural component of due process, which imposes procedures that the government must follow before depriving an individual of a protected entitlement. *District Attorney's Office for Third Judicial Dist. v. Osborne, 557 U.S. 52, 67, 129 S. Ct. 2308, 174 L. Ed. 2d 38 (2009)*.

Having identified the legal theories to which the Complaint is tethered, Court will evaluate the merits of Defendants' arguments in favor of dismissal; first, with respect to Individual Defendants, then, with respect to TCCSB.

5

(4:13CV00768)

**A. Individual Defendants**

Defendants argue that the Complaint should be dismissed with respect to Individual Defendants because Plaintiffs do not allege facts showing that they violated a constitutional right. ECF No. 4 at 4-5. Even had this been accomplished, Defendants maintain, Individual Defendants are protected from suit by qualified immunity. ECF No. 4 at 10-14.

*1. Failure to State a Claim*

The Court preliminarily notes that the Complaint–unfortunately not a model of careful pleading–asserts a violation of the Fifth Amendment's Due Process Clause, which Plaintiffs claim is "made applicable to the States through the Fourteenth Amendment." ECF No. 1 to 3. It is well-recognized that the Fifth Amendment's Due Process Clause applies only to the actions of the federal government, not state or local governments. *Scott v. Clay County, Tenn.*, 205 F.3d 867, 873 n.8 (6th Cir. 2000); *Koessel v. Sublette County Sheriff's Dept.*, 717 F.3d 736, 748 n.2 (10th Cir. 2013); *Zutz v. Nelson*, 601 F.3d 842, 849 n.4 (8th Cir. 2010); *Bingue v. Prunchak*, 512 F.3d 1169, 1174 (9th Cir. 2008); *Blackburn v. City of Marshall*, 42 F.3d 925, 930 n.3 (5th Cir. 1995). The Due Process Clause of the Fourteenth Amendment, on the other hand, "restricts the activities of the states and their instrumentalities . . . ." *Scott*, at 873 n.8. "Rights guaranteed by the Fifth Amendment are not incorporated into the Fourteenth where . . . such rights, if they exist, can be asserted directly under the Fourteenth Amendment." *Shoemaker v. City of Lock Haven*, 906 F. Supp. 230, 238 (M.D. Pa. 1995). Defendants, to their credit, do not anchor their motion on the ground that the wrong constitutional amendment was cited. Rather they, as does this Court, liberally construe the

(4:13CV00768)

Complaint as if it had properly asserted a Fourteenth Amendment due process claim. *See* ECF No. 4 at 4.

Defendants contend, though, that mere negligence by a government official does not "deprive" an individual of life, liberty, or property within the meaning of the Fourteenth Amendment.[2]  ECF No. 4 at 4.  They maintain that negligence is all the Complaint alleges with respect to Individual Defendants.  Rather absurdly, Defendants argue that the purported "failure to conduct constantly supervised visitation of [BGD] and her natural parents . . . is nothing more than [a] common law tort claim of negligence against TCCSB and its employees."  ECF No. 6 at 2.

True, the guarantee of due process in the Fourteenth Amendment has historically been applied to *deliberate* decisions of government officials to deprive a person of life, liberty, or property.  *Daniels v. Williams*, 474 U.S. 327, 331, 106 S. Ct. 677, 88 L. Ed. 2d 662 (1986).  Consequently, "mere lack of due care by a state official" does not deprive an individual of life, liberty, or property within the meaning of the Fourteenth Amendment.  *Id.* at 330-31.

Defendants' reading of the Complaint, however, glosses over the constitutional dimensions of Plaintiffs' cause of action.  The Court acknowledges that "[a]s a general proposition, a state's failure to protect an individual against private violence does not constitute a violation of due process"; *Nicini v. Morra*, 212 F.3d 798, 806 (3d Cir. 2000) (en banc); because "[t]he Due Process Clause's purpose is to protect the people from the State, not to ensure that the State protects them from each other." *Jasinski v. Tyler*, 729 F.3d 531, 538 (6th Cir. 2013) (quotations omitted).  This

---

[2] "[N]or shall any State deprive any person of life, liberty, or property, without due process of law . . . ."  U.S. Const. amend. XIV, § 1.

(4:13CV00768)

principle was enshrined in *DeShaney v. Winnebago County Dept. of Social Services*, 489 U.S. 189, 192-94, 109 S. Ct. 998, 103 L. Ed. 2d 249 (1989), in which a young child, Joshua, who was beaten and severely injured by his father, brought a due process claim against county officials for failing to remove him from his father's custody after they had reason to believe that he was being abused.  The Supreme Court refused to hold the county liable under the Due Process Clause.  It concluded: "[w]hile the State may have been aware of the dangers that Joshua faced in the free world, it played no part in their creation, nor did it do anything to render him any more vulnerable to them."  *Id.* at 201.

This statement, while central to the Supreme Court's rejection of Joshua's due process claim, "has led every Circuit Court of Appeals, including [the Sixth Circuit], to recognize an exception to *DeShaney* for 'state-created dangers.'"  *Jasinski*, 729 F.3d at 538.  For example, in the foster care context, the Sixth Circuit and its sister circuits have held that "due process extends the right to be free from the infliction of unnecessary harm to children in *state-regulated* foster homes."  *Meador v. Cabinet for Human Resources*, 902 F.2d 474, 476 (6th Cir.) (emphasis added), *cert. denied*, 498 U.S. 867, 111 S. Ct. 182, 112 L. Ed. 2d 145 (1990); *see Nicini*, 212 F.3d at 808; *Yvonne L. v. New Mexico Dept. of Human Services*, 959 F.2d 883, 891 (10th Cir. 1992); *K.H. Through Murphy v. Morgan*, 914 F.2d 846, 849 (7th Cir. 1990).  As ably explained by Judge Posner of the Seventh Circuit, a State can violate a child's Fourteenth Amendment due process rights when it places the child in an abusive foster care environment because, in contrast to *DeShaney*:

> the state removed a child from the custody of her parents; and having done so, it could no more place her in a position of danger, deliberately and without justification, without thereby violating her rights under the due process clause of the Fourteenth Amendment than it could deliberately and without justification place a

8

(4:13CV00768)

> criminal defendant in a jail or prison in which his health or safety would be endangered, without violating his rights either under the cruel and unusual punishments clause of the Eighth Amendment . . . if he was a convicted prisoner . . . or the due process clause if he were awaiting trial. *In either case the state would be a doer of harm rather than merely an inept rescuer, just as the Roman state was a doer of harm when it threw Christians to the lions.*

*Morgan*, at 849 (emphasis added); *see Nicini*, at 808 (whether by placing a child in state-regulated foster care or by placing a prisoner in incarceration, "the state, by affirmative act, renders the individual substantially 'dependent upon the state . . . to meet [his or her] basic needs.'").

Therefore, when "a State creates a perilous situation that renders citizens more vulnerable to danger at the hands of private actors, a plaintiff may bring a substantive due process claim by establishing" (1) an affirmative act by the State that either "created or increased the risk" that the plaintiff would be exposed to private acts of violence; (2) a "special danger to the plaintiff" created by state action, as distinguished from a risk that affects the public at large; and (3) the requisite level of culpability to establish a substantive due process violation. *Schroder v. City of Fort Thomas*, 412 F.3d 724, 728 (6th Cir. 2005). A child's substantive due process right to be free from being thrust into an abusive environment in the foster care context can be analogized here. Like a neglected child for whom the government asserts responsibility, BGD was taken from the world and placed in the care and custody of TCCSB, which affirmatively assumed certain responsibilities regarding her basic needs, including the role of her protector. Similar to the risk created when a government custodian sends a child to an abusive foster home, BGD was imperiled when TCCSB and its employees subjected her to a course of visitation that involved placing her in a room, unsupervised, with individuals who were specially dangerous to her. The danger was particularly acute because BGD, an infant, was among the most helpless and vulnerable of wards. As to the level of culpability, the

9

(4:13CV00768)

Sixth Circuit in *Meador* held that the allegation that state officials were "deliberately indifferent" to reports of abuse in a state-regulated foster home was sufficient to make out a claim that the placement by those officials of a child within the foster home violated substantive due process. 902 F.2d at 476. Deliberate indifference with respect to government action means executive action that is so ill-conceived that it "'shocks the conscience.'" *Schroder*, at 730 (*quoting County of Sacramento v. Lewis*, 523 U.S. 833, 846, 118 S. Ct. 1708, 140 L. Ed. 2d 1043 (1998)). The degree of wrongfulness necessary to reach the "conscience-shocking level" depends on the circumstances of the particular case. *See Nicini*, 212 F.3d at 810; *Miller v. City of Philadelphia*, 174 F.3d 368, 375 (3d Cir. 1999). The Court concludes that the allegations, especially when viewed in favor of Plaintiffs, well surpass the conscience-shocking test. Plaintiffs allege that Individual Defendants knew that BGD's natural father was a convicted child rapist, and that BGD's natural mother suffered from numerous mental health issues, repeatedly had her parental right involuntarily terminated, was subservient to the will of BGD's natural father, and was a victim of his domestic violence. ECF No. 1 at 2-3. Yet, despite this knowledge, Individual Defendants "initiated and facilitated" a course of visitation in which BGD was cast off to a room in which she was left alone and unprotected with dangerous, predatory, and unstable individuals. ECF No. 1 at 2-3. These allegations are sufficient to allow for the conclusion that Individual Defendants were deliberately indifferent to BGD's well-being and safety.[3]

---

[3] As will be discussed later in this decision, the Court spurns Defendants' proposal to follow a four prong test used by the district court in *Craig v. Lima City Schools Board of Ed.*, 384 F. Supp.2d 1136, 1148 (N.D. Ohio 2005), to determine whether § 1983 liability could be imposed for failing to prevent sexual abuse. That test was used in *Craig* to determine whether a

(continued...)

(4:13CV00768)

The Complaint does not suggest that Individual Defendants were merely inept; that they left BGD with her birth parents by accident. Rather, the Complaint portrays them as affirmative doers of harm whom deliberately left BGD alone with highly dangerous individuals in accordance with a visitation program they initiated and carried out. As a consequence, the Court concludes that the Complaint has adequately stated a claim for which relief is available under the law.[4]

### 2. Qualified Immunity

Defendants claim, in the alternative, that Individual Defendants are protected from suit by qualified immunity because the right alleged to have been violated was not clearly established.

Qualified immunity protects government officials in the performance of their discretionary duties by shielding them from "liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982). The essential purpose of qualified immunity is to provide government officials with the ability to reasonably anticipate when their conduct may give rise to liability and to know that "they will not

---

[3](...continued)
*municipality* could held liable based on "an official policy of inaction" with respect to sexual abuse. *Id.* That analysis is not applicable to Individual Defendants, whom are alleged to have committed overt acts to violate a constitutional right.

[4] Defendants contend that Moon and Pape should be dismissed because they were "merely supervisors," and the liability of supervisors in a § 1983 claims "must be based on more than merely the right to control employees." ECF No. 4 at 14. The Court finds that the dismissal of Moon and Pape is not appropriate at this juncture because the Complaint does not simply allege that they had the right to control Watkins. Rather, the Complaint alleges that "Moon and/or Pape" and Watkins initiated and facilitated the course of unsupervised visitation in question. ECF No. 1 at 3.

(4:13CV00768)

be held personally liable as long as their actions are reasonable in light of current American law."

*Anderson v. Creighton*, 483 U.S. 635, 646, 107 S. Ct. 3034, 97 L. Ed. 2d 523 (1987).

The Sixth Circuit has instructed that the qualified immunity standard is one of objective reasonableness and that courts should engage in "'a fact-specific, case-by-case' inquiry focused on 'whether a reasonable official in the defendant's position could have believed that his conduct was lawful, judged from the perspective of the reasonable official on the scene.'" *Marcilis v. Township of Redford*, 693 F.3d 589, 598 (6th Cir. 2012) (*quoting Cochran v. Gilliam*, 656 F.3d 300, 306 (6th Cir. 2011)). In particular, courts should inquire "'(1) whether, considering the allegations in a light most favorable to the party injured, a constitutional right has been violated, and (2) whether that right was clearly established.'" *Hearring v. Sliwowski*, 712 F.3d 275, 279 (6th Cir. 2013) (*quoting Bazzi v. City of Dearborn*, 658 F.3d 598, 606-607 (6th Cir. 2011)). "A right is clearly established if '[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Id.* (*quoting Anderson*, 483 U.S. at 640); *see Grawey v. Drury*, 567 F.3d 302, 313 (6th Cir. 2009) ("[t]he key determination is whether a defendant moving for . . . judgment on qualified immunity grounds was on notice that his alleged actions were unconstitutional"). Courts may decide which of the two questions to address first. *Pearson v. Callahan*, 555 U.S. 223, 236, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009).

In assessing whether a right is "clearly established," the Court must first look to the decisions of the United States Supreme Court, then to the decisions of the Sixth Circuit, and lastly to the decisions of other circuits. *Ciminillo v. Streicher*, 434 F.3d 461, 468 (6th Cir. 2006). While a case "directly on point" is not required, existing precedent must have placed the constitutional question

12

(4:13CV00768)

"beyond debate." *Ashcroft v. al-Kidd*, __ U.S. __, 131 S. Ct. 2074, 2083, 179 L. Ed. 2d 1149 (2011);

*see Smith v. Cupp*, 430 F.3d 766, 776-77 (6ᵗʰ Cir. 2005) ("where a general constitutional rule applies

with 'obvious clarity' to a particular case, factually similar decisional law is not required to defeat

a claim of qualified immunity").

    As discussed, the Sixth Circuit has held that "due process extends the right to be free from

the infliction of unnecessary harm to children in state-regulated foster homes." *Meador*, 902 F.2d

at 476.  Other circuits have explicitly concluded that the right of a child to reasonable safety while

in state-regulated foster care is clearly established.  *See Yvonne L.*, 959 F.2d at 891; *Morgan*, 914

F.2d at 853.  Both *Yvonne L.* and *Morgan* looked to *Youngberg v. Romeo*, 457 U.S. 307, 102 S. Ct.

2452, 73 L. Ed. 2d 28 (1982), a case that did not involve foster care.  In *Youngberg*, the Supreme

Court held that mentally retarded individuals committed to state institutions have a Fourteenth

Amendment substantive due process right to "reasonable care and safety." *Id.* at 324.  Judge Posner

reasoned, in *Morgan,* that "*Youngberg v. Romeo* made clear . . . that the Constitution requires the

responsible state officials to take steps to prevent children in state institutions from deteriorating

physically or psychologically." *Morgan*, at 851.  He continued:  "[t]here is . . . clearly implicit in

*Youngberg*, a prima facie right not to be placed with a foster parent who the state's caseworkers and

supervisors know or suspect is likely to abuse or neglect the foster child." *Id.* at 853.

    Because the case law in the Sixth Circuit and elsewhere clearly shows that children in state-

sponsored foster care have a substantive due process right to be reasonably safe from harm; *Meador,*

902 F.2d at 476; *Yvonne L.*, 959 F.2d at 891; *Morgan*, 914 F.2d at 853; the Court finds that it is

"beyond debate" that a child such as BGD, who at all relevant times was in the custody of a child

(4:13CV00768)

services agency, enjoys an analogous right to reasonable safety–especially because the visitation

program that was initiated and facilitated by Individuals Defendants, and the sexual abuse that was

perpetrated, occurred within the agency's own walls.  The Court, therefore, concludes that cases from

this and other circuits provided notice to Individual Defendants that their conduct–placing BGD

alone in a room with a known child rapist and another unstable individual–violated due process.

Based on the foregoing, the Court concludes that Individual Defendants are not entitled to

qualified immunity.

**B.  TCCSB**

Defendants next assert that the Complaint should be dismissed with respect to TCCSB

because Plaintiffs fail to allege facts showing that TCCSB can be held liable under *Monell*.  ECF No.

4 at 5-6.  Alternatively, Defendants argue that TCCSB should be dismissed from this lawsuit because

the agency is afforded sovereign immunity under the Eleventh Amendment.  ECF No. 4 at 7.

*1.  Failure to State a Claim*

Defendants claim that in order for Plaintiffs to prevail against TCCSB, they must prove the

following: (1) the existence of a clear and persistent pattern of sexual abuse; (2) notice or

constructive notice on the part of Defendants; (3) Defendants' tacit approval of the unconstitutional

conduct, such that their deliberate indifference in their failure to act can be said to amount to an

official policy of inaction; and (4) that Defendants' custom was the direct causal link in the

constitutional deprivation.  ECF No. 4 at 5.  According to Defendants, TCCSB must be dismissed

from this lawsuit because none of the above facts are shown in the Complaint.  ECF No. 4 at 6.

(4:13CV00768)

Defendants appropriately recognize that Plaintiffs assert against TCCSB a theory of municipal liability under *Monell*. In *Monell*, the Supreme Court announced that municipalities may be held liable under § 1983 if the injury was caused by an "official policy" or "custom" of the municipality. 436 U.S. at 690-91. The reason for restricting municipal liability to injuries caused by policy or custom was the Supreme Court's determination that Congress did not intend for § 1983 to impose *respondeat superior* liability upon municipalities for injuries inflicted solely by its employees or agents. *Id.* at 695. Therefore, "[t]hat a plaintiff has suffered a deprivation of federal rights at the hands of a municipal employee will not alone permit an inference of municipal culpability and causation; the plaintiff will simply have shown that the *employee* acted culpably." *Board of County Commissioners of Bryan County v. Brown*, 520 U.S. 397, 406-407, 117 S. Ct. 1382, 137 L. Ed. 2d 626 (1997) (emphasis in original). There must, rather, have been "deliberate conduct" on the part of the municipality. *Id.* at 404.

The four-pronged test referenced by Defendants, citing *Craig v. Lima City Schools Board of Ed.*, 384 F. Supp.2d 1136, 1148 (N.D. Ohio 2005), is misplaced because it does not square with the theory of *Monell* liability alleged by Plaintiffs. The *Craig* test is designed to determine whether a school board could be held responsible for the sexual abuse perpetrated by a school employee because the board had adopted a custom of *failing to act* to prevent sexual abuse. *Id.*; *see Doe v. Claiborne County, Tenn.*, 103 F.3d 495, 508 (6th Cir. 1996). To meet the test, the evidence "must show that the need to act is so obvious that the School Board's 'conscious' decision not to act can be said to amount to a 'policy' of deliberate indifference to [the victim's] constitutional rights." *Doe, at 508*. Plaintiffs do not, however, assert a custom-of-inaction theory. No custom of failing to act

15

(4:13CV00768)

is alleged to have caused BGD's constitutional deprivation.  Instead, the Complaint alleges that TCCSB "adopted, published, and implemented" child visitation guidelines that "permitted the unsupervised visitation of children by parents having criminal, social, and mental health histories and attributes like those of" BGD's natural parents.  ECF No. 1 at 3.  It is, therefore, the guidelines, adopted by TCCSB as its official policy, that are alleged to have caused the violation in question.

Defendants contend that the visitation guidelines relating to BGD were "derived from a direct order of a juvenile court" and not from an official policy adopted by TCCSB.  ECF No. 6 at 11. Defendants, in fact, expressly refute the existence of the policy alleged to have been adopted.  ECF No. 6 at 11.  Because these arguments go beyond the pleadings, it is inappropriate for the Court to consider them in ruling on a Rule 12(b)(6) motion to dismiss.  If the Court had wished to consider them, Defendants have not submitted evidence to support their claim.  These arguments should be reserved for a summary judgment motion filed after the close of discovery.

That Plaintiffs did not allege facts conforming to the four-prong test identified by Defendants does not mean they have failed to assert a *Monell* claim, because that test does not correspond with Plaintiffs' theory of liability.  Therefore, TCCSB is not subject to dismissal on the ground asserted.

### 2. Sovereign Immunity

Finally, Defendants claim that TCCSB, although a municipal entity of Trumbull County, Ohio, is really "an alter ego or arm of the State of Ohio."  ECF No. 4 at 8.  Defendants argue that the consequence of this relationship is that TCCSB, like the State of Ohio, is entitled to the protection of sovereign immunity.  ECF No. 4 at 9.

16

(4:13CV00768)

The Eleventh Amendment to the United States Constitution provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. The Supreme Court has stated that "federal jurisdiction over suits against unconsenting States was not contemplated by the Constitution when establishing the judicial power of the United States." Sossamon v. Texas, __ U.S. __, 131 S. Ct. 1651, 1657-58, 179 L. Ed. 2d 700 (2011).

Although States are protected by the Eleventh Amendment, local municipalities typically are not. Will v. Michigan Dept. of State Police, 491 U.S. 58, 70, 109 S. Ct. 2304, 105 L. Ed. 2d 45 (1989). "However, when acting on a particular issue or in a particular area, a local government official or entity may serve as an alter ego or arm of the state, and, in that capacity, it may receive Eleventh Amendment protection." Denton v. Bedinghaus, 40 Fed. Appx. 974, 978 (6th Cir. 2002). "[T]he entity asserting Eleventh Amendment immunity has the burden to show that it is entitled to immunity, i.e., that it is an arm of the State." Gragg v. Kentucky Cabinet for Workforce Development, 289 F.3d 958, 963 (6th Cir. 2002).

In determining whether an entity is an "arm of the State" on the one hand or a "political subdivision on the other," the Supreme Court has considered several factors: (1) the State's potential liability for a judgment against the entity; (2) the language by which State statutes and State courts refer to the entity and the degree of State control and veto power of the entity's actions; (3) whether State or local officials appoint the board members of the entity; and (4) whether the entity's functions fall within the traditional purview of State or local government. Ernst v. Rising, 427 F.3d 351, 359

17

(4:13CV00768)

(6th Cir. 2005) (*citing Hess v. Port Authority Trans-Hudson Corp.*, 513 U.S. 30, 44-51, 115 S. Ct. 394, 130 L. Ed. 2d 245 (1994)), *cert. denied*, 547 U.S. 1021, 126 S. Ct. 1584, 164 L. Ed. 2d 302 (2006).  The first factor-the potential liability of the State–is the "foremost" factor.  *Id.*

Overall, Defendants provide meager support for their assertion that TCCSB is an arm of the State of Ohio.  Defendants point out that its existence is mandated under Ohio law.  *See* R.C. § 5153.02.[5]  They also argue, without providing much detail, that some of TCCSB's governing procedures and policies are codified in the Ohio Revised Code.

At most, Defendants show that Ohio exercises some control over TCCSB's actions, which falls under the second prong of the *Ernst* test.  It is not uncommon, however, for municipal entities to have some of their duties, procedures, and policies outlined under State law.  Moreover, Ohio courts have referred to county children services boards, including TCCSB, as political subdivisions; *see Marshall v. Montgomery County Children Services Board*, 92 Ohio St.3d 348, 351-52, 750 N.E.2d 549 (2001); *Doe v. Trumbull County Children Services Board*, No. 2011-T-0080, 2012 WL 1107707 at *2 (Ohio App. 11 Dist. March 30, 2012); which, pursuant to the second prong of the *Ernst* test, weighs against a finding that TCCSB is an arm of the State.  In addition, Defendants do not address the first, third, and fourth factors of the test.

The Court concludes that Defendants have not carried their burden to demonstrate that TCCSB is an arm of the State of Ohio.  Defendants' motion to dismiss on the ground of sovereign immunity is, therefore, denied.

---

[5] Section 5153.02 provides in relevant part that "[e]ach county shall have a public children services agency."

(4:13CV00768)

## IV. **Conclusion**

Based on the foregoing, the Court denies Defendants' motion to dismiss.


IT IS SO ORDERED

December 31, 2013                                /s/ Benita Y. Pearson       
Date                                                       Benita Y. Pearson
United States District Judge

19